UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | |
| PHOTO STENCIL, LLC ) | Case No. 16-16897-MER |
| EIN: 26-0334354 ) | Chapter 11 |
| ) | |
| Debtor. ) | |

## MOTION FOR AUTHORITY TO USE CASH COLLATERAL

The Debtor and Debtor in Possession, Photo Stencil, LLC ("Debtor"), by and through its attorneys, Kutner Brinen, P.C., moves the Court pursuant to 11 U.S.C. § 363(c)(2) and Bankruptcy Rules 4001(b) and 9014 for entry of an order authorizing the Debtor's use of cash collateral, setting a final hearing on the use of cash collateral, and providing adequate protection to properly perfected secured creditors, and as grounds therefor states as follows:

### BACKGROUND

1. The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on July 12, 2016. The Debtor remains a Debtor-in-Possession.

2. The Debtor is engaged in business as a designer and manufacturer of high-performance stencils, squeegee blades, and tooling for the surface mount assembly, solar, and semiconductor industries. Among other things, the Debtor designs and manufactures high end stencils for the electrical component industry and is the only such company with such capability in North America. The Debtor operates out of its facility located at 16080 Table Mountain Pkwy., Suite 100, Golden, CO 80403. Additional information on the Debtor is located at the Debtor's website, www.photostencil.com.

3. The Debtor is engaged in a manufacturing business and currently employs approximately 37 people following several reductions in force that have been implemented to reduce costs.

4. The Debtor's production facility and office is located in a building that the Debtor subleases from Pixelteq, Inc. pursuant to a sublease dated in April 2014. Despite the sublease date, it took an extended amount of time to improve the facility and for the Debtor to move into the facility which only occurred in January 2016. The facility has been improved by the Debtor at a cost of

approximately $3 million in tenant improvement and equipment. The monthly rent for the facility is approximately $41,813.33 plus other amounts due under the sublease.

5. The Debtor has several secured loan obligations. The most senior lien on accounts receivable and personal property is held by Celtic Capital Corporation ("Celtic"). The Celtic loan has an outstanding balance of approximately $250,530. The junior liens to that held by Celtic is a secured claim held by TKF Interim Funding II, LLC ("TKF"). The TKF loan has an outstanding balance of approximately $4,900,000. The TKF loan is also secured by all accounts receivable and personal property. The TKF lien is subordinate to the Celtic lien by written agreement of the parties. The next lien is held by PMC Financial Services Group, LLC ("PMC"). The PMC claim is approximately $2,000,000 and is senior to the TKF lien.

6. Based on the foregoing, Celtic, TKF, and PMC may have a secured lien positions on the Debtor's funds and revenues that constitute cash collateral as the term is defined in the Bankruptcy Code.

7. The Debtor's total asset value as of the Petition Date is based primarily upon its accounts receivable, inventory, and property, plant and equipment. The Debtor's accounts receivable as of the Petition Date is approximately $422,000. The Debtor's cash on hand and in bank accounts as of the Petition Date is approximately $2,000. The Debtor has approximately $150-200,000 in inventory. The Debtor's property, plant, and equipment based upon its April 2016 Balance Sheet, net of depreciation, is approximately $5,251,979.

8. The Debtor is replacing its inventory, accounts receivable and cash in the ordinary course of its operations.

9. Accordingly the secured interest of Celtic, TKF, and PMC in the Debtor's assets is adequately protected against the Debtor's ongoing use of cash.

## RELIEF REQUESTED

10. The Debtor plans to continue operation of its business throughout the Chapter 11 case and propose a Plan of Reorganization which provides for the continuation of the Debtor's business. It is only through a Plan that unsecured creditors will see a recovery on account of their claims.

11. In order to pay necessary operating expenses, the Debtor must immediately use Cash Collateral in which Celtic, TKF, and PMC have an interest. The Debtor proposes to use cash collateral on an interim basis until such time as the Court schedules a final hearing on the use of cash

collateral. At the final hearing, the Debtor will seek relief to use cash collateral over six months pursuant to a budget which is attached hereto. On an interim basis over the next 30 days and on a six month basis, the Debtor has prepared a budget setting forth its expected revenues and cash use. A copy of the budget is attached hereto and incorporated herein as Exhibit A ("Budget"). The Debtor proposes to meet the Budget subject to the ability to deviate from the Budget by up to 15% per line item, per month.

12. The Budget reflects a conservative analysis of the Debtor's income and expenses over the projected periods.

13. The majority of the Debtor's revenues and available cash are derived from the sale of product to customers. The Debtor's customers include Intel Corp. and a number of high tech companies. Without the use of cash collateral, the Debtor will have insufficient funding for business operations. Therefore, the Debtor's use of cash collateral during the interim period is necessary to avoid immediate and irreparable harm to the estate. With the use of cash collateral, the Debtor will not be able to pay employees, utilities, and other costs associated with operating the Debtor's business.

14. The Debtor will be replacing its accounts receivable, cash, and cash equivalents in the course of its daily operations and therefore the collateral base will remain stable and will improve over time. The Debtor's cash position is projected to be positive after meeting expenses over the budgeted period.

15. In order to provide adequate protection for the Debtor's use of cash collateral to Celtic, TFK, and PMC, to the extent they are properly perfected, the Debtor proposes the following:

    a. The Debtor will provide a replacement lien on all post-petition accounts, accounts receivable, and inventory to the extent that the use of the cash collateral results in a decrease in the value of the collateral pursuant to 11 U.S.C. § 361(2);

    b. The Debtor will maintain adequate insurance coverage on all personal property assets and adequately insure against any potential loss;

    c. The Debtor shall provide to Celtic, TFK, PMC all periodic reports and information filed with the Bankruptcy Court, including debtor-in-possession reports;

   d. The Debtor will only expend cash collateral pursuant to the Budget subject to reasonable fluctuation by no more than 15% for each expense line item per month;

   e. The Debtor will pay all post-petition taxes; and

   f. The Debtor will retain in good repair all collateral in which the creditors have an interest.

16. Should the Debtor default in the provision of adequate protection, the Debtor's approved use of cash collateral will cease and Celtic, TFK, and PMC will have the opportunity to obtain further relief from this Court.

17. Approval of the Debtor's use of cash collateral in accordance with this Motion and pursuant to the Budget, Exhibit A, is, on an interim basis and a final basis, in the best interest of the Debtor, its creditors and the estate as it will allow the Debtor to maintain its ongoing business operations, allow the Debtor to generate revenue, and provide the Debtor with an opportunity to propose a meaningful Plan.

18. The Debtor requests authority to extend the six month budgeted cash collateral use period on notice with opportunity for a hearing solely to Bank and the U.S. Trustee by providing such parties with new budgets for additional monthly periods.

## REQUEST FOR EMERGENCY HEARING ON INTERIM RELIEF

19. Without the immediate use of cash collateral, the Debtor will not be able to fund ongoing business operations. The Debtor therefore respectfully requests that the Court set an emergency hearing for the consideration of the interim use of cash collateral and continue such hearing as may be needed to allow for extensions of interim use.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order, authorizing the Debtor's use of cash collateral in accordance with this Motion, authorize the Debtor to provide adequate protection to any properly perfected secured party in the form of that set forth herein, and for such further and additional relief as to the Court may appear proper.

DATED: July 13, 2016

                                          Respectfully submitted,

                                          By:  */s/ Lee M. Kutner*
                                               Lee M. Kutner #10966
                                               **KUTNER BRINEN, P.C.**
                                               1660 Lincoln Street
                                               Suite 1850
                                               Denver, CO 80264
                                               Telephone:  (303) 832-2400
                                               Telecopy: (303) 832-1510
                                               Email: lmk@kutnerlaw.com

Photo Stencil, LLC
13 Week Cash Flow
Prepared Date: July 12, 2016

| | Week of 7/11 (a) | Week of 7/18(c) | Week of 7/25 | Week of 8/1 | Week of 8/8 | Week of 8/15 | Week of 8/22 | Week of 8/29 | Week of 9/5 | Week of 9/12 | Week of 9/19 | Week of 9/26 | Week of 10/3 | Jul 16 | Aug 16 | Sep 16 | Oct 16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue Per Day** | | | | | | | | | | | | | | | | | |
| Intel | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 45,000 | 60,000 | 75,000 | 15,000 |
| Non-Intel | 7,000 | 7,000 | 7,000 | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | 21,000 | 34,000 | 46,500 | 9,500 |
| Total Revenue per Day | 22,000 | 22,000 | 22,000 | 23,500 | 23,500 | 23,500 | 23,500 | 23,500 | 24,500 | 24,500 | 24,500 | 24,500 | 24,500 | 66,000 | 94,000 | 121,500 | 24,500 |
| Total Revenue | 88,000 | 110,000 | 110,000 | 117,500 | 117,500 | 117,500 | 117,500 | 117,500 | 98,000 | 122,500 | 122,500 | 122,500 | 122,500 | 308,000 | 470,000 | 583,000 | 122,500 |
| Sales Discounts | 880 | 1,100 | 1,100 | 1,175 | 1,175 | 1,175 | 1,175 | 1,175 | 980 | 1,225 | 1,225 | 1,225 | 1,225 | 3,080 | 4,700 | 5,830 | 1,225 |
| **Net Revenue (d)** | 87,120 | 108,900 | 108,900 | 116,325 | 116,325 | 116,325 | 116,325 | 116,325 | 97,020 | 121,275 | 121,275 | 121,275 | 121,275 | 304,920 | 465,300 | 577,170 | 121,275 |
| Mexico Note Payment | | | 30,000 | | | | 30,000 | | | | | 30,000 | | 30,000 | 30,000 | 30,000 | |
| Total Incoming Revenue/Cash | 87,120 | 108,900 | 138,900 | 116,325 | 116,325 | 116,325 | 146,325 | 116,325 | 97,020 | 121,275 | 121,275 | 151,275 | 121,275 | 334,920 | 495,300 | 607,170 | 121,275 |
| **Total Burdened Payroll (b)** | | 119,700 | 83,500 | 78,200 | 80,000 | 78,200 | 80,000 | 78,200 | 80,000 | 78,200 | 80,000 | 78,200 | 80,000 | 283,200 | 216,400 | 244,600 | 80,000 |
| **Manufacturing Materials** | | | | | | | | | | | | | | | | | |
| % of Revenue | 20% | 15% | 17% | 17% | 17% | 17% | 17% | 17% | 17% | 17% | 17% | 17% | 17% | 17% | 17% | 17% | 17% |
| Total Manufacturing Materials | | 16,500 | 18,700 | 19,975 | 19,975 | 19,975 | 19,975 | 19,975 | 16,660 | 20,825 | 20,825 | 20,825 | 20,825 | 55,200 | 79,900 | 99,110 | 20,825 |
| **Other Disbursements** | | | | | | | | | | | | | | | | | |
| Fedex | 1,500 | 1,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 4,000 | 10,000 | 12,500 | 2,500 |
| UPS | 300 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 700 | 1,600 | 2,000 | 400 |
| Airgas | | 1,500 | 2,400 | 2,400 | | | | | | | | | | 1,600 | 2,400 | 4,800 | |
| Waste Disposal | 3,000 | | | 3,000 | 3,000 | | | | 3,000 | | | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| Trash/Janitorial | 1,167 | | 1,750 | 1,750 | | | 1,750 | | | | 1,750 | 1,750 | | 1,167 | 1,750 | 3,500 | |
| Cloud/Network | 8,900 | | 8,900 | 8,900 | | | 8,900 | | | | 8,900 | 8,900 | | 8,900 | 8,900 | 17,800 | |
| Prudential - Clean Room Uniforms | 800 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 1,300 | 2,000 | 2,500 | 500 |
| Unifirst - Uniforms | 800 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 1,300 | 2,000 | 2,500 | 500 |
| Equipment Repair/Maintenance | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 3,400 | 6,800 | 8,500 | 1,700 |
| Copiers/Fax | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 600 | 1,200 | 1,200 | 300 |
| Vans/Carpools | 500 | 2,100 | 3,200 | 3,200 | | | 3,200 | | | | 3,200 | 3,200 | | 2,100 | 3,200 | 3,200 | 300 |
| Phones | | | 2,000 | 2,000 | | 1,600 | | 2,000 | | | | 2,000 | 2,000 | | 2,000 | 2,000 | 2,000 |
| Delisting/Stewart Env | | 1,600 | | | | 1,000 | | | | | | | | 1,600 | 1,600 | 1,600 | |
| Trailer Storage | | 1,000 | | | | | | | | | | | | 1,000 | 1,000 | 1,000 | |
| Rachi Fees | | 4,903 | | | 8,000 | | | | | | | | | 4,903 | 8,000 | 8,000 | |
| Kelly Services | | 2,500 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 4,200 | 6,800 | 8,500 | 1,700 |
| Travel Reimbursements/Advances | | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 6,000 | 12,000 | 15,000 | 3,000 |
| CNA Property Insurance | | 1,500 | | | | 1,500 | | | | 1,500 | | | | 1,500 | 1,500 | 1,500 | |
| CNA D&O Insurance | | 1,500 | | 3,800 | | 1,500 | | | | 1,500 | | | | 1,500 | 1,500 | 1,500 | |
| Workers Comp | | | | | | | | 3,800 | | | | 3,800 | | 1,500 | 3,800 | 7,600 | |
| North Table | | | | | 3,000 | | | | 3,000 | | | | | | 3,800 | 3,000 | |
| Xcel Energy | | | | | | 23,000 | | | 23,000 | | | | | | 23,000 | 23,000 | |
| People's Bank | | | 2,452 | | 2,500 | | | | | | | | | 2,452 | 2,500 | 3,000 | |
| Fueling | | | | 41,832 | | | | 41,832 | | | | 41,832 | | | 41,832 | 83,664 | |
| Bankruptcy Costs | | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 20,000 | 25,000 | 5,000 |
| Misc | 3,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 5,000 | 8,000 | 10,000 | 2,000 |
| **Total Other Disbursements** | | 29,967 | 31,255 | 81,482 | 34,100 | 46,200 | 17,600 | 79,482 | 25,600 | 54,200 | 17,600 | 75,982 | 25,800 | 61,222 | 179,382 | 252,864 | 25,800 |
| **Total Disbursements** | | 166,167 | 133,455 | 129,657 | 134,075 | 94,375 | 117,575 | 127,657 | 122,260 | 103,225 | 118,425 | 125,007 | 126,625 | 299,622 | 475,682 | 596,574 | 126,625 |
| **Increase/(Decrease) In Cash** | 87,120 | (57,267) | 5,445 | (13,332) | (17,750) | 21,950 | 28,750 | (11,332) | (25,240) | 18,050 | 2,850 | 26,268 | (5,350) | 35,298 | 19,618 | 10,596 | (5,350) |
| Beginning Cash | 0 | 87,120 | 29,853 | 35,298 | 21,966 | 4,216 | 26,166 | 54,916 | 43,584 | 18,344 | 36,394 | 39,244 | 65,512 | | | | |
| Ending Cash | 87,120 | 29,853 | 35,298 | 21,966 | 4,216 | 26,166 | 54,916 | 43,584 | 18,344 | 36,394 | 39,244 | 65,512 | 60,162 | | | | |